IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ANTHONY GAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:05-cv-150-MJR |
| | ) | |
| DR. CHANDRA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by

United States District Judge Michael J. Reagan pursuant to 28 U.S.C. § 636(b)(1)(B), Federal

Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for Report and Recommendations on

Plaintiff Anthony Gay's Motion for Summary Judgment filed on December 4, 2006 (Doc. 32),

and on Defendant Dr. Chandra's Motion for Summary Judgment filed on January 23, 2007 (Doc.

35). For the reasons set forth below, it is **RECOMMENDED** that the Plaintiff's motion for

summary judgment be **DENIED**, that the Defendant's motion for summary judgment be

**GRANTED**, that the case be **DISMISSED**, and that the Court adopt the following findings of

fact and conclusions of law:

### FINDINGS OF FACT

Plaintiff Anthony Gay, an inmate in the Tamms Correctional Center, filed this action on

March 1, 2005, alleging deprivations of his constitutional rights by Defendant Chandra, a

psychiatrist at Tamms, in violation of 42 U.S.C. § 1983. The Court completed its threshold

review pursuant to 28 U.S.C. § 1915A on April 25, 2006, finding that Plaintiff had stated two

claims against Defendant Chandra: first, for subjecting him to cruel and unusual conditions of

confinement, and second, for deliberate indifference to his serious medical needs, both in violation of the Eighth Amendment (Doc. 12).

In Count 1 of his complaint, Plaintiff states that on March 14, 2004, Defendant Chandra ordered that Plaintiff be strapped to a metal bed frame, naked, in a cold cell, with nothing to eat, for over eleven hours. On April 1, 2004, Defendant confined Plaintiff under the same conditions for over twelve hours. On this date, Plaintiff held a paperclip between his teeth. After he had been strapped down, Plaintiff choked on the paper clip and required treatment at an outside hospital. Plaintiff states that Defendant Chandra was aware of the paper clip, but restrained Plaintiff anyway, knowing that he might choke. Plaintiff further states that Defendant Chandra ordered that he be strapped to a metal bed frame, in a cold cell, with nothing to eat, on six additional dates in 2004: on April 14 for over twelve hours; on April 17 for over thirty-two hours; on May 8 for over eleven hours; on June 30 for eight hours; on July 2 for four hours; and on July 11 for eight hours. Plaintiff states that these periods of restraint constituted cruel and unusual punishment in violation of the Eighth Amendment (Doc. 1).

In Count 2 of the complaint Plaintiff states that on February 8, 2004, he mutilated his inner thigh. Between that date and the filing of the complaint, Plaintiff mutilated his arm, leg, and penis at least thirty-five times. In May 2004, he mutilated his penis so badly that he spent a week recovering in an outside hospital. Plaintiff states that if he does not mutilate himself, he suffers anxiety attacks. He states that Defendant Chandra has refused to provide him any anti-anxiety medication. As a result, Plaintiff continues to self-mutilate. Plaintiff argues that Defendant Chandra's failure to prescribe anti-anxiety medications exposes him to a risk of suicide which constitutes deliberate indifference to his serious medical needs (Doc. 1).

<u>Plaintiff's Motion for Summary Judgment</u>

Plaintiff has filed a motion for summary judgment (Doc. 32), in which he asserts there are no genuine issues of material fact in the case and argues that based upon the allegations in his complaint, he is entitled to judgment as a matter of law in his favor.  In support of this motion, Plaintiff includes copies of medical records that demonstrate the following:

1.     On March 14, 2004, Plaintiff was placed in therapeutic restraints by order of Defendant Chandra due to his "self-inflicted wounds/self-harm behavior;" he was denied food between 9:20 p.m. on March 14 through 9:05 a.m. March 15 (Doc. 32, Exh. I);

2.     On April 1, 2004, Defendant Chandra ordered Plaintiff placed in restraints and ordered that he be denied food and water during the period of restraint (Doc. 32, Exh. E); Plaintiff was denied food between 2:30 a.m. and 10:45 a.m. on April 2, 2004 (Doc. 32, Exh. J);

3.     On April 14, 2004, Plaintiff was cutting himself; due to the self-harm behavior, Defendant Chandra ordered that he be placed in therapeutic restraints and that he be denied "food/meals" while so restrained (Doc. 32, Exh. H); the records indicate Plaintiff was denied food between 7:30 p.m. on April 14 and 7:30 a.m. on April 15, 2004 (Doc. 32, Exh. K);

4.     On April 17, 2004, Defendant Chandra ordered Plaintiff placed in therapeutic restraints for "self-harm and threats of self-harm behavior;" Plaintiff was denied food between 6:30 p.m. on April 17 and 2:30 p.m. on April 19, 2004 (Doc. 32, Exh. M);

5.     On May 8, 2004, Defendant Chandra ordered Plaintiff placed in therapeutic restraints and ordered that he be denied food and water while restrained (Doc. 32, Exh. F);

6.     On July 2, 2004, Defendant Chandra ordered Plaintiff placed in therapeutic restraints and

ordered that he be denied meals during the period of restraint (Doc. 32, Exh. G);

7.    On July 10, 2004, Defendant Chandra ordered Plaintiff placed in therapeutic restraints for "self-harm behavior;" Plaintiff was denied food between 10:40 p.m. on July 10 and 6:55 a.m. on July 11, 2004 (Doc. 32; Exh. N).

Based on these facts, Plaintiff argues that by confining him by strapping him down in a cold cell with no food, Defendant Chandra subjected him to cruel and unusual conditions of confinement in violation of the Eighth Amendment.

In support of his claim that Defendant denied him medication, Plaintiff includes copies of grievances in which he requested anti-anxiety medication (Doc. 32, Exhs. A-C). Based on that evidence, Plaintiff argues that Defendant Chandra's failure to provide him with anti-anxiety medications, as he requested, constituted deliberate indifference to his serious medical needs in violation of the Eighth Amendment.

In response, Defendant Chandra does not dispute any of the facts presented in Plaintiff's motion for summary judgment. Defendant avers in an affidavit that Plaintiff suffers from complicated mental health disorders, in which he engages in self-harm behavior by cutting himself with various objects "in an effort to manipulate staff" to provide him with attention (Doc. 34, Exh. 1, ¶¶ 6, 9). Plaintiff has a history of cutting himself on his inner thigh and penis (Doc. 34, Exh. 1, ¶ 17). Defendant avers that certain of the injuries sustained from Plaintiff's self-harm are superficial and suggest that Plaintiff is seeking attention (Doc. 34, Exh. 1, ¶ 18). At other times, Plaintiff's actions and resulting wounds are much more severe and suggest that Plaintiff is at risk of harming himself (Doc. 34, Exh. 1, ¶ 19). On occasions when Plaintiff has been a "significant threat to himself," he has been placed in therapeutic restraints in an effort to

prevent serious harm (Doc. 34, Exh. 1, ¶10, 19). Plaintiff was restrained "only as long as was necessary to prevent serious harm." (Doc. 34, Exh. 1, ¶ 25).

During some periods of restraint, due to his agitated behavior, Plaintiff was at risk for choking or aspirating food, and was therefore denied meals (Doc. 34, Exh. 1, ¶¶ 10, 30, 32, 34). At these times, Plaintiff was monitored continually by medical staff (Doc. 34, Exh. 1, ¶ 30). Defendant avers that Plaintiff was never denied food as a means of punishment (Doc. 34, Exh.1, ¶¶ 10, 32). Defendant further avers that Plaintiff has always received adequate nutrition, and has never sustained any injury as a result of a lack of food (Doc. 34, Exh. 1, ¶¶ 11-12).

Defendant avers that he prescribed Plaintiff medications, including BuSpar and Doxepin, at various times to attempt to modify his behavior (Doc. 34, Exh. 1, ¶¶ 13, 21). Plaintiff has refused to take the medications "on occasion" and has refused to take the doses prescribed (Doc. 34, Exh. 1, ¶ 21). Plaintiff has also received individual therapy from mental health professionals (Doc. 34, Exh. 1, ¶ 22). Defendant asserts that his treatment of Plaintiff has been "consistent with the community standards." (Doc. 34, Exh. 1, ¶ 26).

<u>Defendant's Motion for Summary Judgment</u>

Defendant Chandra has also moved for summary judgment, arguing that there are no genuine issues of material fact regarding the Plaintiff's claims, and that he is entitled to judgment as a matter of law (Doc. 35).

In his motion, Defendant describes in great detail the Plaintiff's medical records and Defendant's opinions regarding Plaintiff's medical condition. The undersigned attempts to summarize those facts below.

Plaintiff was transferred to Tamms Correctional Center on January 28, 2004 (Doc. 35,

Exh. A).  He was observed and evaluated by medical staff for several days (Doc. 35, Exhs. B-G).

On February 6, 2004, Defendant Chandra evaluated Plaintiff.  Although Plaintiff requested

medication, specifically Elavil, Defendant Chandra determined that Plaintiff did not appear to

suffer from "any psychopathology or problems that would necessitate starting him on

psychotropic medication."  Plaintiff denied depression or suicidal thoughts, and was not in any

acute distress.  Further, but due to past behavior, Defendant Chandra was concerned that Plaintiff

would hoard a medication like Elavil, placing him at a risk of harm.  Defendant found that

Plaintiff had no Axis I mental disorder, but diagnosed him with antisocial personality disorder

and narcissistic personality disorder (Doc. 35, Exh. K).  Defendant Chandra noted the following

on that date:

> Mr. Gay was seen for a follow up.  He continues to have no problems or
> difficulties at this time but that would immediately make it necessary for him to
> be started on a psychotropic medication.  He currently reports no difficulties.  I
> plan to see him for a follow up and will discuss the question of medication, if
> needed, further with him.

(Doc. 35, Exh. K).

On February 9, 2004, Plaintiff cut himself on the forearm and upper inner right thigh

(Doc. 35, Exhs. M-N).  Dr. Chandra ordered Plaintiff placed on suicide watch in a strip cell (no

belongings) with finger foods and a safety blanket.  Defendant prescribed Sinequan (Doc. 35,

Exh. O).  Defendant determined that Plaintiff was using manipulative behavior to gain the

attention of Dr. Rhodes, a female psychologist (Doc. 35, Exhs. P-Q, T-V).

On February 20, 2004, Plaintiff cut his leg and reopened the wound to his thigh (Doc. 35,

Exh. W).  Defendant Chandra ordered Plaintiff placed on suicide watch (Doc. 35, Exh. Y).  He

repeatedly asked to see Dr. Rhodes; a nurse recorded his behavior as "manipulative." (Doc. 35,

Exhs. Y-Z, AA-BB).  Plaintiff also threatened to castrate himself (Doc. 35, Exh. CC).  During the same period of observation, on February 23, 2004, Plaintiff reopened a wound over his right groin and cut his penis and right thigh (Doc. 35, Exhs. GG-HH).  On February 27, 2004, a mental health evaluation indicated that Plaintiff cut himself in order to talk to Dr. Rhodes.  The evaluator opined that Plaintiff cuts himself on his penis and upper thighs to receive attention from female nursing staff because it is sexually stimulating for him (Doc. 35, Exh. LL).

Defendant Chandra evaluated Plaintiff on March 5, 2004.  Plaintiff denied being depressed or suicidal, but requested medication.  Defendant Chandra determined that Plaintiff "did not show any psychopathology to warrant psychotropic medication at this time as he did not show evidence of depression, dysthymia, and psychosis."  Defendant recorded the Plaintiff was "manipulative."   Defendant Chandra indicated that he would raise Plaintiff's request for BuSpar with the mental health team (Doc. 35, Exh. OO).

On March 6, 2004, Plaintiff again cut his penis and attempted to reopen his prior wounds.  As a result, Defendant Chandra ordered Plaintiff placed on suicide watch (Doc. 35, Exhs. PP-RR).  Plaintiff remained on suicide watch until March 10, 2004.  He was not cooperative with the nursing staff and continued to aggravate his wounds (Doc. 35, Exh. SS).

On March 13, 2004, Plaintiff cut his arm and refused medical treatment.  Defendant Chandra placed him on suicide watch.  Plaintiff threatened to throw feces at the nurses and he reopened the cuts on his leg, inner thigh, right arm, and penis (Doc. 35, Exhs. WW-XX).  By that evening, Plaintiff was yelling and threatening self-harm.  He continued to cut himself and continued to threaten self-harm.  He was belligerent and demanding, but not psychotic (Doc. 35, Exh. ZZ)  Due to the imminent risk for serious self-harm, Defendant Chandra ordered Plaintiff

placed in therapeutic restraints to prevent him from cutting himself further (Doc. 35, Exhs. XX-ZZ). Plaintiff remained in restraints from 9:20 p.m. on March 14 to 9:05 a.m. on March 15, 2004 (Doc. 35, Chandra Affidavit, ¶ 80). During that period of restraint, Plaintiff was not offered food because Defendant Chandra believed placing any objects in Plaintiff's mouth could have presented a serious risk of harm. Further, Defendant Chandra did not believe missing one meal would deprive Plaintiff of adequate nutrition (Doc. 35, Exh. AAA; Chandra Affidavit, ¶ 81). Defendant Chandra opined that therapeutic restraints were the "least restrictive method" of preventing significant self-harm and were used only during the period of time when Plaintiff "imposed the highest threat to himself for self-mutilation." (Doc. 35, Chandra Affidavit, ¶¶ 83, 86). After being removed from restraints, Plaintiff remained on suicide watch and psychiatric observation until March 19, 2004 (Doc. 35, Exh. GGG).

On March 31, 2004, the mental health team treating Plaintiff changed his diagnosis on Axis I to paraphilia, because of his tendency to harm himself in order to obtain sexual gratification when treated by medical staff for his injuries (Doc. 35, Exh. HHH). The mental health team's report stated:

> Inmate is inflicting self-harm to his penis and groin area in an effort to force female medical staff to touch him. He has also engaged in sexually inappropriate behavior while in therapeutic restraints. Given this behavior, diagnosis was changed.

(Doc. 35, Exh. HHH).

On April 1, 2004, Plaintiff cut the inside of his right thigh and right inner forearm. He became angry with Nurse Shafer and threatened to cut his penis every time she appeared at his cell (Doc. 35, Exh. III). Nurse Shafer informed Defendant Chandra by phone of Plaintiff's behavior and threats. Defendant Chandra ordered him placed in therapeutic restraints (Doc. 35,

Exhs. JJJ, LLL). After this placement, Plaintiff threatened to bite Nurse Kay Jordan. Nurse Jordan believed Plaintiff had a staple or paper clip between his lower front teeth. He refused to allow her to remove or see the object. Dr. Powers, a physician at Tamms, determined that the object was not an imminent threat (Doc. 35, Exh. MMM). Shortly after he was restrained, however, Plaintiff claimed to have swallowed a piece of a paper clip and that it was stuck in his throat. Security staff attempted to remove the object with forceps, but Plaintiff refused to open his mouth. Plaintiff was then transported to the Union County Hospital (Doc. 35, Exhs. OOO-RRR). Upon return, Plaintiff was placed back in restraints in accordance with Defendant Chandra's prior order (Doc. 35, Exh. SSS). Plaintiff was restrained from 10:30 p.m. April 1 to 10:45 a.m. April 2, 2004 (Doc. 35, Exh. KKK). In Defendant Chandra's opinion, the use of restraints was medically appropriate and necessary to prevent Plaintiff's further self-harm (Doc. 35, Chandra Affidavit, ¶ 111). After the restraints were removed, Plaintiff remained on suicide watch until April 5, 2004 (Doc. 35, Chandra Affidavit, ¶ 115).

On April 11, 2004, Plaintiff was temporarily transferred to Pontiac Correctional Center (Doc. 35, Exh. WWW). Upon return to Tamms on April 13, 2004, Nurse Fornear discovered that Plaintiff had severely cut himself on his right upper and lower arm, his left hipbone, and upper right thigh. The wounds had been sutured (Doc. 35, Exh. XXX; Chandra Affidavit, ¶ 119). Plaintiff was given tetracycline for infection to the wounds (Doc. 35, Exh. YYY; Chandra Affidavit, ¶ 123).

On April 14, 2004, Plaintiff cut his penis. He did not appear depressed or suicidal, but manipulative and "motivated by secondary gain." (Doc. 35, Exh. AAAA; Chandra Affidavit ¶ 124). The wound required three sutures (Doc. 35, Exh. BBBB). That evening, he cut himself

again and was smearing blood in his cell (Doc. 35, Exh. DDDD).  Defendant Chandra ordered

Plaintiff placed in therapeutic restraints to prevent further self-harm (Doc. 35, Exh. DDDD).

Defendant Chandra ordered that Plaintiff receive no food during the period of restraint (Doc. 35,

Exh. DDDD).  Plaintiff was restrained between 7:30 p.m. April 14 and 7:55 a.m. April 15, 2004

(Doc. 35, Chandra Affidavit, ¶ 131).  Defendant Chandra avers that Plaintiff may have missed

breakfast during this period of restraint, but that he would not normally have been served any

meal overnight.  In Defendant Chandra's opinion, missing one meal did not pose a risk of harm

to Plaintiff (Doc. 35, Chandra Affidavit ¶ 131).  On the contrary, Plaintiff was restrained in an

effort to prevent him from further harming himself by reopening his wounds (Doc. 35, Exh.

FFFF).  Throughout the period of restraint, Plaintiff continued to display uncooperative and

threatening behavior, requiring continued restraint (Doc. 35, Chandra Affidavit, ¶ 135).

    Plaintiff remained on suicide watch.  On April 17, 2004, Plaintiff reopened his wounds

(Doc. 35, Exh. NNNN).  He indicated that he would continue to cut himself and asked to be tied

down.  Defendant Chandra ordered Plaintiff placed in restraints to prevent further self-harm

(Doc. 35, Exhs. OOOO-PPPP).  Plaintiff was restrained from 6:30 p.m. on April 17 to 10:30 a.m.

on April 18, 2004.  He was not given any food during this time.  Defendant Chandra reported

that Plaintiff was restrained "only for that period of time when he poses a significant and

imminent threat to himself." (Doc. 35, Chandra Affidavit, ¶ 141).  Chandra stated that the

periods of restraint were not intended to punish Plaintiff, but rather the restraints are placed in an

effort to prevent Plaintiff from harming himself (Doc. 35, Chandra Affidavit, ¶ 143).

    During the period of restraint on April 17 and 18, Plaintiff continued to act belligerently,

using vulgar language with nurses, and threatening to harm himself (Doc. 35, Chandra Affidavit,

¶ 150). On April 18, at 10:50 a.m. Defendant Chandra assessed Plaintiff's condition. Plaintiff was agitated and angry, yelling and screaming, and threatening further self-harm if released. Accordingly, Defendant Chandra placed Plaintiff back in restraints (Doc. 35, Exh. SSSS). Mental health team member Jill Stevens concurred in Defendant Chandra's opinion that continued restraint was necessary (Doc. 35, Exh. TTTT). Plaintiff was released from restraints at 2:00 a.m. on April 19, 2004, and stepped down to suicide watch (Doc. 35, Exh. WWWW). He was released from psychiatric observation on April 23, 2004 (Doc. 35, Chandra Affidavit, ¶ 161). Defendant avers that the treatment provided to Plaintiff "was appropriate to address his behavior and prevent him from harming himself with the least restrictive means available." (Doc. 35, Chandra Affidavit, ¶ 162).

On May 1, 2004, Plaintiff reopened some of his wounds. Defendant Chandra therefore placed him on suicide watch (Doc. 35, Exhs. CCCCC-DDDDD; Chandra Affidavit, ¶ 164). On May 8, 2004, Plaintiff cut his arm and leg and was again placed on suicide watch. That afternoon he began cutting his penis. Dr. Powers ordered him restrained; Defendant Chandra confirmed the restraint order, in an attempt to prevent Plaintiff from self-harm. (Doc. 35, Exh. EEEEE; Chandra Affidavit, ¶ 172). Plaintiff had reopened three old wounds on his upper right thigh and a wound on his penis. Plaintiff threatened to continue to reopen the wounds. Plaintiff was denied food during restraint to prevent him from harming himself by choking. Defendant Chandra opined that Plaintiff was "at risk of significant harm to himself." (Doc. 35, Chandra Affidavit, ¶ 173). Plaintiff remained restrained from 5:30 p.m. on May 8 to 5 a.m. on May 9, 2004 (Doc. 35, Chandra Affidavit, ¶ 174). Plaintiff was not given any food during that period, but would have missed only one meal, which, in Defendant Chandra's opinion, would not have

caused him significant harm (Doc. 35, Chandra Affidavit, ¶ 175).

Defendant Chandra described the protocols used in treating Plaintiff:

> When Mr. Gay appears to present the most significant risk of harm to himself, he is placed in therapeutic restraints. As he exhibits continued periods of time wherein he is not exhibiting self-harm behavior, his needs for restraints are reduced incrementally. The next level after being in therapeutic restraints would be placing the patient on suicide watch without restraints. He would then step down to close supervision and then psychiatric observation. At each of these levels, the patient is monitored on a regular and frequent time frame. However, the intervals of time are increased as the patient's behavior becomes less threatening.

(Doc. 35, Chandra Affidavit, ¶¶ 180-81).

On June 8, 2004, Plaintiff cut himself on his penis and right thigh. He placed toilet paper and toothpaste on the wounds, making them difficult to clean. He was placed on suicide watch (Doc. 35, Exh. JJJJJJ). Plaintiff also indicated that he had placed a paper clip in his penis, but the nurse was unable to see it and verify the claim (Doc. 35, Exh. KKKKKK). Plaintiff was placed on crisis care placement from June 8 to June 10, 2004. (Doc. 35, Exh. MMMMMM). The medical records do not indicate that Plaintiff was placed in restraints on this date (Doc. 35, Chandra Affidavit, ¶ 201).

On June 30, 2004, Plaintiff became verbally abusive with the nurses, and he began reopening his old wounds on his right arm, wrist, legs, and penis (Doc. 35, Exh. JJJJJ). Defendant Chandra ordered Plaintiff placed in therapeutic restraints, where he remained from 1:30 a.m. to 7:30 a.m. on June 30, 2004. He received no food during this time but in Defendant Chandra's opinion the denial of food did not constitute a risk of harm to his health (Doc. 35, Exhs. KKKKK-LLLLL; Chandra Affidavit, ¶ 186). In fact, Defendant Chandra opined that offering Plaintiff food would have caused a risk of harm (Doc. 35, Exh. LLLLL; Chandra

Affidavit, ¶ 187).  During his restraint, Plaintiff was verbally abusive with the nurses and made inappropriate sexual references (Doc. 35, Exh. NNNNN).

On July 8, 2004, while Plaintiff was on suicide watch, he threatened to throw feces at a nurse (Doc. 35, Exh. NNNNNN).  There is no indication in the medical records that Plaintiff was placed in therapeutic restraints on this date (Doc. 35, Chandra Affidavit, ¶ 214).

On July 10, 2004, Defendant Chandra placed Plaintiff on suicide watch for self-harming behaviors.  Plaintiff indicated he would continue to cut himself until he was placed in therapeutic restraints.  Defendant Chandra therefore ordered Plaintiff restrained (Doc. 35, Exhs. BBBBBB-DDDDDD).  Plaintiff was allowed no food during his restraint because of the risk of harm it posed.  He remained in restraints from 10:40 p.m. on July 10 to 6:56 a.m. on July 11, 2004 (Doc. 35, Chandra Affidavit, ¶ 221).  Plaintiff's placement in restraints was undertaken in order to prevent him from harming himself and in an effort to calm his "agitated and uncooperative behavior." (Doc. 35, Exhs. GGGGGG-HHHHHH; Chandra Affidavit, ¶ 224).

In Defendant Chandra's opinion, all care and treatment provided to Plaintiff at Tamms was "medically necessary from a psychiatric viewpoint," and all treatment was reasonable and appropriate (Doc. 35, Chandra Affidavit, ¶¶ 227-228).  Plaintiff's behaviors were never ignored or untreated (Doc. 35, Chandra Affidavit, ¶ 236).

Regarding medication, Defendant Chandra avers that psychotropic medication was not indicated during the times referenced in the complaint.  He states that Plaintiff is currently being treated with the anti-anxiety medication BuSpar, and while it has been effective in controlling some of his anxiety, it has not prevented Plaintiff from the self-harm behaviors; he has continued to exhibit them even on medication (Doc. 35, Chandra Affidavit, ¶¶ 207-08; Doc. 34, Exh. 1, ¶

13).

In response, Plaintiff does not dispute the facts as described in Defendant's motion for summary judgment. Instead he argues that ample evidence exists in the record for him to prevail on his legal claims that Defendant Chandra created cruel and unusual conditions of confinement that violated his rights under the Eighth Amendment. He further argues that the evidence suggests that Defendant Chandra acted with deliberate indifference to his serious medical needs in denying him medications (Doc. 41).

CONCLUSIONS OF LAW

*Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See also Ruffin-Thompkins v. Experian Information Solutions, Inc., 422 F.3d 603, 607 (7th Cir. 2005); Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc., 409 F.3d 833, 836 (7th Cir. 2005). The burden is upon the moving party to establish that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970). See also Lawrence v. Kenosha County, 391 F.3d 837, 841 (7th Cir. 2004). A fact is material if it is outcome determinative under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ballance v. City of Springfield, Illinois Police Department, 424 F.3d 614, 616 (7th Cir. 2005); Hottenroth v. Village of Slinger, 388 F.3d 1015, 1027 (7th Cir.2004). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the

court reveals that "alternate inferences can be drawn from the available evidence." Spiegula v. Hull, 371 F.3d 928, 935 (7th Cir. 2004). See also Anderer v. Jones, 385 F.3d 1043, 1064 (7th Cir. 2004).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). See also Celotex Corporation v. Catrett, 477 U.S. 317, 322-23 (1986); Packman v. Chicago Tribune Co., 267 F.3d 628, 637 (7th Cir. 2001); Sybron Transition Corporation v. Security Insurance Company of Hartford, 107 F.3d 1250, 1255 (7th Cir. 1997).

### *Cruel and Unusual Conditions of Confinement*

The Supreme Court has recognized that prisons cannot be "free of discomfort." Rhodes v. Chapman, 452 U.S. 337, 349 (1981) ("[T]he Constitution does not mandate comfortable prisons.")  Prison officials are required under the Eighth Amendment, however, to secure prisoners under "humane conditions of confinement," which includes ensuring prisoners have adequate food, clothing, shelter, and medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994). Deliberate indifference to these needs violates the Eighth Amendment. Id.  To make out a claim for deliberate indifference, a prisoner must satisfy both an objective and a subjective standard.

Henderson v. Sheahan, 196 F.3d 839, 845 (7th Cir. 1999) (citing Farmer, 511 U.S. at 834). The objective component requires a showing that the deprivation at issue is objectively "sufficiently serious," and must "result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834. Put another way, to sustain a conditions-of-confinement claim, the prisoner must show "extreme deprivations." Henderson, 196 F.3d at 845 (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)).

The Supreme Court describes the subjective component as follows:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837. The Supreme Court has specifically rejected imposition of liability upon a prison official "solely because of the presence of objectively inhumane prison conditions" without the requisite subjective intent. Id. (citing Wilson v. Seiter, 501 U.S. 294, 299-302 (1991)).

It is clear from the detailed facts described above that Plaintiff suffers from a mental disorder characterized by self-mutilation. He frequently cuts himself on the genitals, groin, inner thighs, and arms. Sometimes the cuts are superficial, at other times they are more severe. Defendant Chandra has consistently responded to Plaintiff's self-harming behaviors by placing him on suicide watch, where personal belongings are removed and he is closely observed. When Plaintiff is intent on harming himself and his behavior cannot be controlled by close observation, Defendant Chandra has ordered the Plaintiff placed in therapeutic restraints until his attempts at self-harm have ceased. Defendant Chandra avers, and Plaintiff does not dispute, that the

therapeutic restraints were used only on occasions where Plaintiff was at risk of seriously harming himself. Defendant Chandra avers, and Plaintiff does not dispute, that therapeutic restraint was the least restrictive means of controlling Plaintiff's behavior, that it was medically necessary, and that it was consistent with prevailing medical standards.

In this case, Plaintiff missed at most one meal during each period of physical restraint. Defendant Chandra indicates that during none of these periods of restraint was Plaintiff at a risk of harm from missing a meal. Plaintiff does not dispute this fact. Further, although Plaintiff claims that missing a meal during periods of restraint exposed him to a risk or harm, he presents no evidence to support the claim. Yet, the hundreds of pages of exhibits produced by Defendant provide ample evidence that Plaintiff was at a substantial risk of self-harm.

The parties do not dispute the material facts in the case. They agree that Plaintiff harms himself and that Defendant Chandra acts to prevent further self-harm by physically restraining Plaintiff. They differ, however, on the interpretation of these facts in light of the prevailing law. Thus, the Court is presented with a purely legal question. Plaintiff argues that periods of physical restraint and their attendant deprivations are cruel and unusual conditions of confinement. Defendant Chandra contends that the periods of physical restraint are acts necessary to prevent Plaintiff from harming himself. A prison official will be held constitutionally liable for violating the Eighth Amendment where he knows of and disregards an "excessive risk" to inmate health or safety. Indisputably, Plaintiff, at times, poses a risk to himself from his repeated self-harming behaviors. Defendant Chandra has consistently acted to prevent Plaintiff from harming himself.

Plaintiff's interpretation places Defendant Chandra in a constitutional catch-22. Either he

ignores Plaintiff's self-mutilation and allows Plaintiff to cause harm to himself, in violation of the constitutional mandate that he not expose Plaintiff to an excessive risk of harm to his health or safety, or he attempts to prevent Plaintiff from harming himself by placing him in restraints and denying him food for his own safety, and risks being accused of creating cruel and unusual conditions of confinement. The undersigned cannot ignore the public policy implications of encouraging doctors to ignore prisoners who present harm to themselves because they might later be subject to allegations of cruel and unusual punishment in the methods by which they attempt to restrain those intent upon self-harm. Defendant's interpretation, on the other hand, encourages physicians to be vigilant in treating inmates who pose a risk to themselves through repeated attempts at self-harm. The undersigned finds this the more persuasive argument.

The undersigned agrees with Defendant Chandra that Plaintiff has failed to provide sufficient evidence that Defendant Chandra acted with deliberate indifference to Plaintiff's conditions of confinement. That is, Plaintiff has not provided sufficient evidence that Defendant Chandra created an excessive risk to his health or safety. Thus, this Court **RECOMMENDS** that the Plaintiff's motion for summary judgment be denied on this point.

On the contrary, this Court finds Defendant Chandra acted at all times in treating Plaintiff with a clear regard for the risks to Plaintiff's health and safety. Furthermore, this Court finds that Defendant Chandra has provided sufficient evidence to support judgment in his favor. The record contains no evidence that Defendant acted with deliberate indifference to an excessive risk of harm to Plaintiff's health or safety. Thus, the undersigned **RECOMMENDS** that Defendant's motion for summary judgment be granted on this point.

### *Deliberate Indifference to a Serious Medical Need*

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104, (1976). In order to prevail on this claim, the Plaintiff must show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." Greeno v. Daley, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted). With respect to the objective component of that inquiry, "[a] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Foelker v. Outagamie County, 394 F.3d 510, 512-513 (7th Cir. 2005) (citation omitted).

A prisoner must also show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference to a serious medical need. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" Estelle, 429 U.S. at 104 (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." Duckworth v. Franzen, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. Duckworth, 780 F.2d at 653; Shockley v. Jones, 823 F.2d 1068, 1072 (7th Cir. 1987). Put another way, the Plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. Greeno, 414 F.3d at 653. "Whether a

prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer v. Brennan, 511 U.S. 825, 842 (1994) (citations omitted).

An inmate's "mere disagreement" with a physician's chosen course of medical treatment does not amount deliberate indifference under the Eighth Amendment. Snipes v. DeTella, 95 F.3d 586, 591 (7th Cir. 1996) (quoting Warren v. Fanning, 950 F.2d 1370, 1373 (8th Cir. 1991)).

Plaintiff argues that Defendant Chandra, by failing to provide him with anti-anxiety medications, acted with deliberate indifference to a serious medical need in violation of the Eighth Amendment. Defendant argues that Plaintiff has not presented evidence to support this claim.

The undersigned finds that Plaintiff has presented insufficient evidence to support his claim of deliberate indifference for Defendant Chandra's failure to prescribe medication. Plaintiff has presented copies of grievances indicating that he requested anti-anxiety medications. He has presented no evidence that Defendant Chandra acted with the requisite state of mind in denying him medication. The undisputed facts demonstrate that Defendant did not act with a culpable state of mind in denying medications, rather, he made a medical judgment that medications were unnecessary.

Defendant, on the other hand, has provided ample evidence that he frequently evaluated Plaintiff's mental health, and specifically found that Plaintiff's condition did not indicate a need for medication. He has presented evidence that Plaintiff was prescribed BuSpar, and that the medication did not prevent his self-harming behavior. It is clear that Plaintiff disagrees with

Defendant Chandra's failure to provide medication.  Plaintiff's disagreement with that determination does not implicate a violation of the Eighth Amendment. See Snipes .v DeTella, 95 F.3d at 591.

Based on the foregoing, the undersigned **RECOMMENDS** that on this point Plaintiff's motion for summary judgment be denied and that Defendant's motion for summary judgment be granted.

## CONCLUSION

Therefore, for the reasons set forth above, it is **RECOMMENDED** that the Court adopt the foregoing findings of fact and conclusions of law, that the Plaintiff's Motion for Summary Judgment (Doc. 32) be **DENIED**, that the Defendant's Motion for Summary Judgment (Doc. 35) be **GRANTED,** and that this case be **DISMISSED** with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have ten (10) days after service of this Recommendation to file written objections thereto.  The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. Snyder v. Nolen, 380 F.3d 279, 284 (7th Cir. 2004); United States v. Hernandez-Rivas, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED:  March 5, 2008**


s/ *Donald G. Wilkerson*
**DONALD G. WILKERSON**
**United States Magistrate Judge**