**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **ANTHONY GAY,**                    ) | |

ANTHONY GAY,                      )
                                 )
      **Plaintiff,**            )
                                 )
      **v.**                   )     **Case No. 05-CV-0150-MJR-DGW**
                                 )
**DR. RAKESH CHANDRA,**    )
                                 )
      **Defendant**        )

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

**A. Introduction**

On March 1, 2005, Plaintiff Anthony Gay filed a two-count complaint (Doc. 1) against Dr. Rakesh Chandra, a psychiatrist who treated him at the Tamms Correctional Center in 2004 ("Tamms"). Gay's first claim is that the conditions of confinement to which Dr. Chandra subjected him from March 14, 2004 through July 11, 2004 violated the Eighth Amendment. Gay alleges that the temperatures in his cell were so low as to pose a substantial risk of harm. He also alleges that he was physically restrained without food or clothing for long periods of time without legitimate reason and was restrained for 32 hours on a metal slab bed without a mattress. Gay also alleges that Dr. Chandra was deliberately indifferent to his physical well-being when he knowingly ordered Gay into therapeutic restraints while Gay held a metal object in his mouth. Gay's second claim is that from January 29, 2004 through May 4, 2004 Dr. Chandra was deliberately indifferent to his serious mental health needs by refusing to give medication that would alleviate Gay's compulsion to self-mutilate.

On March 25, 2009, Dr. Chandra filed a motion for summary judgment (Doc. 95), arguing that based on the evidence, a reasonable juror could not find in favor for Gay on either claim. Having fully

reviewed the parties' filings, the Court **GRANTS IN PART AND DENIES IN PART** Dr. Chandra's motion for summary judgment.

## B. Background Facts

Gay is a 35-year-old inmate who is currently incarcerated at Tamms. During his incarceration, Gay has resided in a number of Illinois prisons where he has been treated for a variety of conditions requiring psychiatric treatment. *See* Doc. 100-11. For example, in December of 2000, a psychiatrist at the Pontiac Correctional Center noted that Gay mutilated himself, had a Mood and Personality Disorder, and asked to be given medication. *Id.* at p. 2. Five months later, the psychiatrist at Menard Correctional Center noted that Gay slashed his right thigh with a razor and exhibited hostile behavior by cursing and making threatening gestures. *Id.* at p. 6. Gay subsequently required an emergency transfer to the Dixon Psychiatric Center ("Dixon") due in part to his decision to take off his bandages applied to a self inflicted wound and scribble blood on his cell's wall. *Id.* Consequently, the psychiatrist at Dixon determined that he needed to continue his psychotropic medication. *Id.* The treatment by these psychiatrists also included medication to help Gay's condition. *Id.*

On January 28, 2004, Gay was transferred to Tamms. His transfer summary stated that he had previously inserted foreign objects into his penis, had a personality and "impulse control" disorder, mutilated himself and assaulted staff; however, he was not taking any "psychtropic" medications when he arrived. Doc. 95-2, pp. 1-2. Due to the information contained in his transfer summary, a nurse placed Gay on psychiatric observation the day after he arrived and recommended for Gay to be placed on a mental health treatment plan. *Id.* at p. 2. As a part of the mental health treatment plan, Gay was to be treated by Tamms' entire mental health staff. *Id.* at p. 3.

On February 6, 2004, Dr. Chandra conducted his initial psychiatric evaluation of Gay. Doc. 95-2, p. 4. He determined that Gay had "Axis II diagnosis of antisocial personality order" and "narcissistic

personality disorder." *Id.* at pp. 4-5. Although Gay asked Dr. Chandra for medication (particularly, elavil and sinequan), Dr. Chandra determined psychotropic medication was unnecessary because Gay was just angry that he was transferred to Tamms. *Id.* at p. 4. On February 9, 2004, Gay cut his right thigh and then asked a nurse to come see what he had done. *Id.* at p. 5. The nursing staff at Tamms treated Gay's wounds; however, due to Gay's self-destructive behavior, Dr. Chandra ordered prison staff to place Gay on suicide watch in a strip cell where he would receive finger foods, a mental health assessment and a safety blanket. *Id.* Additionally, security was ordered to observe him every 10 minutes. *Id.*

Throughout February of 2004, Gay continued to cut himself. On February 13, 2004, Gay cut his thighs and legs. Doc. 95-2, p. 9. On February 20, 2004, Gay cut his leg again and reopened a wound that was on his right groin. *Id.* at p. 6. And on February 23, 2004, Gay cut his penis, right thigh, and, once again, reopened the wound over his right groin. *Id.* at p. 10. Tamms' medical staff treated Gay's wounds every time he cut on himself. *See* Doc. 95-2. As a result of Gay cutting on himself, sutures had to be placed in Gay's penis, and the nursing staff had to clean his wounds. *Id.* at pp. 10-11.

After these incidents, Dr. Chandra determined that Gay cut on various parts of his body not because he was depressed or had psychosis, but because he was a manipulator. Doc. 95-2, pp. 6, 10. He believed that Gay harmed himself in order to receive attention from the prison's medical staff. *Id.* at pp. 6, 8. Dr. Chandra determined that Gay specifically wanted the attention of Dr. Kelly Rhodes, who was the on-site psychologist at Tamms. Doc. 95-2, p. 6. In spite of his conclusion, Dr. Chandra kept Gay on suicide watch for almost three weeks in February of 2004 so that Gay could be monitored closely. *Id.* at pp. 6-11. Gay was discharged from suicide watch on February 27, 2004. *Id.* at p. 11.

On March 5, 2004, Gay asked Dr. Chandra if he could go back on medication. *Id.* at p. 11. Gay said he felt isolated because he was alone, and he was upset because Dr. Rhodes had not come to see

him. *Id.* at p. 10. He told Dr. Chandra that he intended to cut himself, but he denied being depressed or suicidal. *Id.* Dr. Chandra diagnosed Gay as having antisocial personality disorder and narcissistic personality disorder, but he did not believe Gay's condition warranted psychotropic medication. *Id.* at p. 11.

Shortly after Dr. Chandra examined him, Gay began pulling on his scabs and cutting his penis. Doc. 95-2, p. 12. As a result, Dr. Chandra ordered Gay to be placed on suicide watch in a strip cell again. *Id.* Dr. Chandra still found that Gay did not need any "psychotropic medication" for his condition. *Id.* at p. 13.

Despite the close monitoring Gay received while he was on suicide watch, on March 14, 2004, Dr. Chandra decided to place Gay in therapeutic restraints throughout the night. Doc. 95-2, p. 13. He made this decision because Gay began to yell, verbally abused the nurses, reopened his old cuts on various parts of his body and stated that he intended to harm himself even more. *Id.* at p. 13-14. Dr. Chandra believed that restraining Gay would prevent him from harming himself any further. *Id.* at p. 14. He did not permit Gay to eat while he was on therapeutic restraints because Dr. Chandra believed Gay could harm himself if there was something in his mouth. *Id.* at p. 13.

While Gay was restrained, he was naked with only a "chuck" (i.e. a pad) to cover his groin area. Doc. 100-4, p. 4. Gay describes the bed to which he was restrained as "a metal bed frame with a solid metal bottom" and describes the experience as like "being tied down to the hood of a car." (Doc. 100-2, p. 2). The cell in which Gay was restrained naked was, allegedly, excessively cold. Gay told a nurse while confined that he had "chills." (Doc. 100-5, p. 3). A different nurse was often cold while working in the prison despite being fully clothed (Doc. 100-4, p. 4). Other inmates also had the experience of being restrained with "icy cold air" blowing on them. (Doc. 100-6, p. 2; Doc. 100-7, p. 2).

Despite his decision to place Gay in restraints, Dr. Chandra still did not believe that Gay needed any psychotropic medication. Doc. 95-2, p. 15. He believed that Gay was being manipulative and engaged in "self-harm for secondary gain rather than as a result of any mental illness." *Id.* He also opined that Gay receives sexual gratification when female medical staff members treat his wounds. *Id.* at p. 16-17. He also noted that once Gay was released from restraints, he immediately asked to see Dr. Rhodes. Doc. 95-2, p. 10.

Unfortunately, Gay's destructive behavior continued to escalate in April 2004 after he was released from restraints. On April 1, 2004, at approximately 9:30 p.m., Gay cut himself on his right thigh and forearm because he was angry about not receiving his mail. *Id.* at p. 16. *See also* Doc. 95-11, Exh. 70. When one of the nurses came to see him, he said: "I'll cut everytime you're here. Next time I'll cut my dick so you have to clean it." *Id.* As a result of Gay's behavior, the nurse contacted Dr. Chandra who was not at the prison at the time, and he ordered that Gay be placed in therapeutic restraints again. Doc. 95-2, p. 16. Dr. Chandra's order directed the staff not to give Gay any food, water, or medication during this time. Doc. 95-2, pp. 17-18.

Before the prison staff was able to place any therapeutic restraints on Gay, however, a prison official told Nurse Kay Jordan that Gay had some type of object, either a staple or a paperclip, lodged between his front lower teeth. Doc. 95-2, p. 18; *see also* Doc. 95-11, Exh. 71; Doc 100-9, p. 5. Jordan tried to see the object but Gay threatened to bite her and would not let her even see the object. Doc. 95-2, pp. 17-18. Consequently, Nurse Jordan contacted Dr. Chandra who ordered the prison staff to proceed with their plan to place Gay in therapeutic restraints. *Id.*

Approximately two hours later, after threatening to throw his feces on a nurse, Gay swallowed what he announced was a paperclip. *Id.* He began coughing and spitting up mucus and blood, and he told the prison staff members that the paperclip was stuck in his throat. Doc. 95-11, Exhs. 72, 73, 74.

After releasing Gay from restraints, the prison's security staff tried to open Gay's mouth and perform the Heimlich Maneuver, but both attempts proved unsuccessful. Doc. 95-2, p. 18. As a result, they called an ambulance and Gay was taken to a local hospital at around midnight on April 2, 2004. Doc. 95-11, Exh. 75. When Gay returned from the hospital, he was placed back into therapeutic restraints for what was left of the sixteen hours Dr. Chandra had previously ordered and was released from restraints only for the purpose of relieving himself. Doc. 95-11, Exh. 77.

Dr. Chandra re-evaluated Gay the same morning that Gay returned from the hospital to determine whether therapeutic restraints were still necessary. Doc. 95-2, p. 19. His assessment was that Gay was not depressed, psychotic, or upset, but that Gay was manipulative and showed poor judgment. *Id.* Gay remained in therapeutic restraints until April 2, 2004, at 10:45 p.m., and then he was placed on suicide watch and remained closely supervised for the next three days. Doc. 95-11, Exh. 80; Doc. 95-2, p. 19.

Throughout the following months, the cycle of placing Gay on and off suicide watch and/or therapeutic restraints continued due to Gay's erratic behavior. *See* Doc. 95-2. Dr. Chandra claims that Gay was calm when he examined him after he returned from the hospital; however, Gay cut his wrist, thigh, and left hipbone while he was on a writ to another prison. *Id.* at p. 20. One day, Gay would not say or do anything that would lead one to believe he would harm himself, but within twenty-four hours, Gay cut his penis again, smeared blood in his cell, and shoved blood stained pieces of paper out of his cell's door. *Id.* at pp. 21-22. On April 17, 2004, Gay told a nurse he was going to cut himself and asked to be tied down. *Id.* at p. 25. Dr. Chandra ordered that Gay be placed in therapeutic restraints for 16 hours; however, twenty minutes after Gay was released, Dr. Chandra apparently ordered that he be restrained again for another 16 hours. *Id.* at p. 25.

In May and June Gay reopened wounds to his arm, wrists, and legs, continued to cut his arm, leg, and penis, and placed toilet paper and toothpaste on his penis. Doc. 95-2, pp. 28-29, 30, 33. As a result, Dr. Chandra ordered that Gay be placed on therapeutic restraints approximately ten times between April and July of 2004. According to Dr. Chandra, throughout this time, Gay called nurses vulgar names, tried to gratify himself, and encouraged another inmate to follow his example and cut himself. *Id.* at p. 26.

## C. Summary Judgment Standard

Summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Haefling v. United Parcel Service, Inc.,* **169 F.3d 494, 497 (7th Cir. 1999);** *Dempsey v. Atchison, Topeka and Santa Fe Railway Co.*, **16 F.3d 832, 836 (7th Cir. 1994).** "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." **FED. R. CIV. P. 56 (c).** The initial burden is upon the moving party to establish that no material facts are in dispute as to an essential element of the non-moving party's case. *Delta Consulting Group, Inc. v. R. Randle Const., Inc.*, **554 F.3d 1133, 1137 (7th Cir. 2009).** Once the moving party meets the burden, the non-moving party must come forward with evidence that establishes a genuine issue for trial. **Fed. R. Civ. P. 56(e).**

A fact is material if it is outcome determinative under applicable law. *Hardin v. S.C. Johnson & Son, Inc.*, **167 F.3d 340, 344 (7th Cir. 1999);** *Smith v. Severn*, **129 F.3d 419, 427 (7th Cir. 1997);** *Estate of Stevens v. City of Green Bay*, **105 F.3d 1169, 1173 (7th Cir. 1997).** Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. *Plair v. E.J. Brach & Sons, Inc.*, **105 F.3d**

**343, 346 (7th Cir. 1997);** *Lawshe v. Simpson*, **16 F.3d 1475, 1478 (7th Cir. 1994);** *Dempsey*, **16 F.3d at 836.**

In deciding such a motion, the trial court must determine whether the evidence presented by the opposing party is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 250 (1986).** *See also Celotex*, **477 U.S. at 322-23;** *Haefling,* **169 F.3d at 497-98.**

## D. Analysis

### 1. Gay's Conditions of Confinement Claims

As discussed above, Gay alleges that Dr. Chandra's orders for four months in 2004 caused his "conditions of confinement" to fall below the standards required by the Eighth Amendment. "Conditions of confinement violate the Eighth Amendment if they deny an inmate the minimal civilized measure of life's necessities and prison officials act with deliberate indifference to the conditions in question." *Payette v. Hoenisch,* **2008 WL 2648917, \*3 (7th Cir. July 7, 2008) (quoting** *Townsend v. Fuchs,* **522 F.3d 765, 773 (7th Cir. 2008)).** *See Mounson v. Chandra*, **2009 WL 1209059, \*8 (S.D. Ill. Mar. 30, 2009) (quoting** *Farmer v. Brennan,* **511 U.S. 825, 834 (1994)).** Eighth Amendment protection, however, is not absolute. It "protects inmates only from conditions of confinement that result from intentional punishment by a prison official and not from those that exist solely as a result of a legitimate institutional concern." *Sanders v. Kingston,* **2002 WL 31856352, \*1 (7th Cir. Nov. 27, 2002).** To prove his claim, "the inmate must produce evidence that objectively, the conditions fell below constitutional thresholds and that subjectively, the defendants were aware of

those conditions but did nothing to correct them." ***Johnson v. Lappin,* 2008 WL 397575, \*2 (7th Cir.**

**Feb. 13, 2008);** *Farmer,* **511 U.S. at 834.**

### a.  The Temperature of Gay's Cell

Dr. Chandra argues he is entitled to summary judgment on Gay's claim that the cold temperatures in the cell in which he was restrained posed substantial risk of harm to Gay.  He contends that Plaintiff has no evidence of what the temperature in the cell was at that time and hence cannot prove that the cell was "too" cold. This cell, moreover, had the same temperature of the cell where Gay was usually confined, and it is undisputed that Gay sometimes chose to walk around his cell without pants or other clothes.

Gay argues that there is a triable issue of fact as to whether Dr. Chandra's decision to restrain him violated the Eighth Amendment because the temperature of the cell where he was restrained while naked[1] was excessively cold.  He contends that even though Dr. Chandra never came to the cell in which he was restrained, a reasonable jury could find that he was deliberately indifferent in failing to discover that the temperature of Gay's cell was excessively cold.  To support his argument, Gay produced evidence that he told one nurse he had "chills" (Doc. 100-5, p. 3).  A different nurse testified she was often cold while working in the prison even though she was fully clothed (Doc. 100-4, p. 4). Finally, Gay submitted evidence from other inmates imprisoned at Tamms who stated that they too were restrained with "icy cold air" blowing on them.  Doc. 100-6, p. 2; Doc. 100-7, p. 2.

Gay's status as an inmate means that while he does not have a constitutional right to live in comfort, he is entitled to adequate shelter, which includes protection from "extreme cold."  ***See***

***Murphy v. Walker,* 51 F.3d 714, 721 (7th Cir. 1995);** *Dixon v. Godinez,* **114 F.3d 640, 642 (7th Cir.**

**1997).**  "In evaluating a claim of extreme cold, the court is to assess various factors, including whether

---

[1] As noted above, inmates who were placed in restraints during 2004 at Tamms wore only a "chuck" (i.e., a pad) over their groin area. *See* Doc. 100-4, p. 4.

the prisoner had alternative means of warmth, the adequacy of those alternatives, the length of exposure to cold, and whether he was forced to endure other harsh conditions in addition to the cold." ***Mounson,*** **2009 WL 1209059 at * 8 (citing *Dixon,* 114 F.3d at 644).** Thus, to avoid summary judgment, Gay must provide evidence showing that the temperature of the cell in which he was confined was excessively cold, or that he was exposed to extremely cold temperatures for an extended amount of time. ***See Flores v. O'Donnell,*** **36 Fed. Appx. 204 (7th Cir. Mar. 26, 2002) (finding that an inmate established a genuine issue of material fact regarding the temperature of his cell when he submitted an affidavit establishing he was exposed to extreme cold for approximately 18 hours before having access to any clothing);** *see also Dixon,* **114 F.3d at 642 (where an inmate presented evidence showing that for several years, the temperatures averaged approximately 49 degrees and at times fell below freezing during the winter).** If Gay is able to establish a genuine issue of material fact as to this factor, he must then show that Dr. Chandra acted with "deliberate indifference to the risk of harm imposed by the cold conditions." ***Mounson*,** **2009 WL 1209059 at *8.** This means that Dr. Chandra "knew that [he] faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." ***Townsend,*** **522 F.3d at 773;** *Baptist v. Hinsley,* **2004 WL 1799361, *1 (7th Cir. Aug. 5, 2004) (noting that an inmate must "show that prison officials knew of and disregarded 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" (quoting *Boyce v. Moore*,** **314 F.3d 884, 888 (7th Cir. 2002)).**

In viewing the record in the light most favorable to Gay, a jury could find that the cell where Gay was restrained was excessively cold — especially in light of the fact that Gay was restrained for several hours with no "alternative means of warmth." ***See Mounson,*** **2009 WL 1209059 at *8.**

Neither party produced evidence showing what the temperature of the cell actually was during that time. But a nurse testified that the temperature at Tamms was often cold and two inmates testified that they were restrained in icy cold conditions. Consequently, Gay has avoided summary judgment on this issue.

But the inquiry as to whether this case should proceed to trial does not end there. To avoid summary judgment, Gay is also required to produce evidence that Dr. Chandra acted with "deliberate indifference to the risk of harm imposed by the cold conditions." ***Mounson***, **2009 WL 1209059 at \*8.** There is little evidence that Dr. Chandra was personally responsible for the temperature at Tamms or in Gay's cell. Section 1983 does not impose liability on individuals who neither *knew of* a potential risk or were not "involved in the alleged deprivation" of Plaintiff's constitutional rights. ***Palmer v. Marion County,* 327 F.3d 588, 592 (7th Cir. 2003); *Del Raine v. Williford,* 32 F.3d 1024, 1047 (7th Cir. 1994) (it is "clear that there must be individual participation and involvement by a defendant" for a claim under §1983); *Baptist,* 2004 WL 1799361 at \*2.** However, given that the general testimony regarding temperatures in Tamms indicates that the conditions were generally cold, the Court finds that a genuine issue of material fact exists as to whether Dr. Chandra knew that Gay would in fact be restrained naked in excessively low temperatures. It is important to note again that it was Dr. Chandra who ordered the restraints which apparently require the patient to be sans all clothes save the "chuck."

Accordingly, Gay avoids summary judgment on this particular aspect of his conditions of confinement claim.

### b. Deprivation of Food

Dr. Chandra next argues that Gay should not be permitted to go forward with his claim that Dr. Chandra's decision to withhold food from Plaintiff while he was restrained violated the Constitution.

Dr. Chandra states that he withheld food from Gay because he became agitated and tried to harm the staff, and he was concerned that Gay would choke on the food. Doc. 100-6, p. 7. He further argues that an order requiring Plaintiff to miss one or two meals is not cruel or unusual, and, as a result of his order, Gay did not suffer any harm. Doc. 96, p. 5.

Gay argues that a reasonable jury could find that the deprivation of food while he was restrained for 32 hours violated the Constitution if there was no legitimate reason for this decision. Gay notes that he had never used food to choke or harm himself in the past, and there were protocols in place at the prison to prevent restrained inmates from choking. In addition, Dr. Chandra admitted that withholding food from an inmate in restraints was "rare."

An Eighth Amendment violation occurs if a prisoner is denied an "identifiable need such as food." **Reed v. McBride, 178 F.3d 849, 853 (7th Cir. 1999) (citing Wilson v. Seiter, 501 U.S. 294, 304).** Although "[o]ne or two missed meals are not actionable as Eighth Amendment violations," an inmate who misses more than two meals may be able to show a constitutional violation. **Curiel v. Stigler, 2008 WL 904894, *5 (N.D. Ill. Mar. 31, 2008); Reed, 178 F.3d at 853 & 856 (denial of food for three to five days at a time created a genuine issue of material fact as to an inmate's Eighth Amendment claim); see Simmons v. Cook, 154 F.3d 805, 806 n.6 (8th Cir. 1998) (upholding judgment against Defendants when inmate was not allowed to eat for thirty-two hours).** Courts must assess the amount of food an inmate was deprived as well as the duration of the deprivation when determining whether an Eighth Amendment violation may have occurred. **Reed, 178 F.3d at 853.**

In this case, the evidence before the Court demonstrates that this issue should be decided by a jury. The evidence before the Court shows that on April 17, 2004, Gay was restrained for sixteen hours. Doc. 95-2, p. 25. He was released on April 18, 2004, but twenty minutes later, it appears that he was placed in restraints again for another sixteen hours. *Id.* at 26. The evidence suggests that the

Plaintiff missed at least three meals and did not eat again until he was released from restraints. Accordingly, Dr. Chandra's decision not to allow Plaintiff to eat during this time creates a jury question regarding his alleged Eighth Amendment violation.

The Court notes that a jury could plausibly find that Dr. Chandra's decision was for Gay's own benefit, or else for the protection of the staff. The following excerpt is a discussion between Gay's attorney, Mr. Hall, and Dr. Chandra:

> Q.   Do you have any independent recollection as to why you would order Mr. Gay to be held in restraints without meals, without meds and without water?
>
> A.   Well, looking at this note, and to answer your question . . . what happened in this particular instance is that he was trying to bite the nurse and had threatened the staff or something like that.  It's very rare to not give meals or water or anything to the inmate, but sometimes . . . we hold the meal because they are so agitated that they could regurgitate their food and choke to death.
>
> On the other occasion what happened is that he was so agitated and he was trying to bite the staff that he's a healthy male, I mean if he misses a meal for a couple of hours it was not going to cause him any harm, but if he bit the nurse or he bit the staff, then it would lead to him having more problems…

Doc. 100-8, p. 10.

Ultimately, the Court must find that a genuine issue of material fact exists as to whether Dr. Chandra's denial of food constitutes a violation of the Eighth Amendment under the circumstances.  As a result, Gay survives summary judgment with respect to this particular aspect of his claim.

### c.  Inadequate Clothing

Gay also claims that Dr. Chandra's decision to restrain him without any clothing denied him "life's necessities" and that Dr. Chandra was deliberately indifferent to his need for clothing. Dr. Chandra argues that he did not allow Gay to wear any clothing while he was restrained to prevent Gay from harming himself with his clothing.  But Gay argues that he had never harmed himself in the past

with his clothes.  He also notes that both male and female prison staff could see him naked, and Gay claims this embarrassed him.  Doc. 100-3, pp. 1, 6, 9.

Indeed, "a lack of clothing" can cause a violation of the Eighth Amendment.  ***Gillis v. Litscher, 468 F.3d 488, 493 (7th Cir. 2006).***   Moroever, "injuries such as personal humiliation and mental anguish and suffering are compensable under the Eighth Amendment."  ***See Morris v. Zefferi, 2008 WL 2952114, \*3 (E.D. Mo. July 28, 2008).***

To decide this issue, the Court finds ***Bowers v. Pollard*** instructive, as its facts are similar to those presented here.  In ***Bowers,*** the inmate inserted objects into his penis on several occasions and had to be placed in restraints numerous times.  **602 F.Supp.2d 977 (E.D. Wis. 2009).**   While restrained, he was not "allowed to wear any clothing, other than a towel [that] laid across his groin."  ***Id.***  The ***Bowers*** court determined that the prison officials "offered no explanation for why [the inmate] was kept naked while restrained.  ***Id.* at 992.**  The Court went on to say:

> One can understand why clothing . . . may not be immediately restored to an inmate who continually destroys them or appears suicidal and has used them to cause harm to himself. . . [B]ut once an inmate is tied down to a bed, he is incapable of using articles of clothing or a blanket to harm himself or others.  The defendants have offered no justification for forcing him to like naked for up to twelve hours.

***Id***.  That court determined that "forced nudity" could be considered "cruel and unusual punishment" within the meaning of the Eighth Amendment. ***Id***. ***See also Anderson v. Nosser,* 438 F.2d 183, 192 (5th Cir. 1971) (forced nudity of male prisoners for up to 36 hours constituted an Eighth Amendment violation under the circumstances).**   Thus, a genuine issue of material fact exists as to whether Dr. Chandra's decision not to allow Plaintiff to wear any clothing denied Gay a "civilized measure" of life's necessities.

As noted above, however, summary judgment may still be proper if there is no evidence demonstrating that Dr. Chandra was deliberately indifferent to the fact that Gay was restrained without

clothes. "A prison official may be held liable under the Eighth Amendment for denying human conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measure to abate it." *Gillis,* **468 F.3d at 491.** However, "a defendant with knowledge of a risk need not take perfect action or even reasonable action . . . his action must be reckless before § 1983 liability can be found." *Collins v. Seeman,* **462 F.3d 757 (7th Cir. 2006).**

It is undisputed that Dr. Chandra knew that Gay was restrained without clothes since he was the one who issued the order. Given that Gay had never attempted to harm himself with his clothes before, the Court finds that there is a genuine issue of material fact as to whether Dr. Chandra violated Gay's Eighth Amendment rights by requiring that he be restrained without clothes. In doing so, the Court notes that Dr. Chandra may have been attempting to comply with Tamms' Institutional Directive concerning the use of therapeutic restraints, which shows that it was a policy of the mental health staff to restrain inmates with only their pelvic area covered. *See* Doc. 100-10, p. 4. But such a directive is not necessarily compliant with constitutional requirements. The Court leaves it to the jury to decide whether Dr. Chandra made this decision recklessly and for the purpose of punishing Gay.

Consequently, Gay avoids summary judgment on this issue as well.

### d. The Use of Restraints

Gay also claims that his civil rights were violated due to Dr. Chandra's use of therapeutic restraints. He claims that a reasonable jury could find that Dr. Chandra's decision to restrain him at all violated the Eighth Amendment because there was no evidence that simply confining Gay in a room without any property would have been insufficient. Gay also asserts Dr. Chandra consistently ignored Tamms' Institutional Directive on the use of therapeutic restraints. Gay further maintains that there is a genuine issue of material fact as to whether Dr. Chandra was deliberately indifferent to a risk that

Gay would harm himself when he knew Gay had an object in his mouth, yet still ordered Gay to be restrained.

"The Eighth Amendment requires prison officials [including health professionals] to take reasonable measures to guarantee the safety of the inmates . . . ." ***Baptist*, 2004 WL 1799361 at \*8.** Restraining an inmate due to a "valid penological reason" or to prevent the inmate from harming himself or others does not violate the constitution. ***See Payette*, 2008 WL 2648917 at \*\*3; *see also Estate of Max G. Cole*, 94 F.3d 254, 262 (7th Cir. 1996) (noting that an inmate's right to be free from restraints "end[s] at the point at which his freedom of restraint posed the substantial risk that he would seriously injure himself.").** But a health professional who decides to restrain an inmate must make his or her decision by appropriately exercising his or her medical judgment. ***Wells v. Franzen*, 777 F.2d 1258, 1261-62 (7th Cir. 1985).** "Due process requires that the nature and the duration of the physical restraint bear some relation to the purpose for which it is prescribed." ***Id.* at 1262.**

Gay claims there is evidence that Dr. Chandra's decision to restrain him ran afoul of the Eighth Amendment because while Gay was restrained, Dr. Chandra ignored Tamms' Institutional Policy on Therapeutic Restraints by failing to *personally* observe Gay and by keeping him restrained longer than that policy allowed. Instead, Gay suggests that placing him in a strip cell without any property would have been adequate. Doc. 100, pp. 15-16. He notes that the paint on the strip cell walls does not chip such that he would not have had access to paint chips or any other foreign object to hurt himself.

Despite Gay's contentions, the Court can not conclude that there is a triable issue of fact as to whether Dr. Chandra's decision to restrain Gay in and of itself violated the Eighth Amendment. First, Tamms' Institutional Directive on the Use of Therapeutic Restraints is written in accordance with state — not federal law. *See* Doc. 100-10, pp. 3-10. Therefore, "any violations of this [directive] cannot

form the basis of § 1983 liability . . . and the Constitution does not necessarily require that it be strictly followed." *Wells,* **777 F.2d at 1264 n.4.** Second, the record shows that Gay used any item that was in his reach — everything from zippers, cell surfaces, and toothbrushes — to injure himself. Finally, even when Gay was restrained, he found ways to harm himself, including swallowing a paperclip. Thus, there was a likelihood that if Gay was placed in a strip cell instead of therapeutic restraints, he may have found a way to injure himself. Consequently, a reasonable jury could only find that Dr. Chandra's decision to restrain Gay was to protect Gay from harming himself.

The Court does agree with Gay, however, that a jury could find that Dr. Chandra was deliberately indifferent by ordering that he be restrained even though he knew that Gay had an object in his mouth. In fact, Gay ultimately choked on this object. A jury could plausibly find that Dr. Chandra disregarded a serious risk to Gay's safety by undertaking this course of action. ***See Payette,*** **2008 WL 2648917 at \*4 (finding that genuine issue of material fact existed as to whether defendants were deliberately indifferent when they ignored new information and advice that had been given to them about the inmate);** ***Hayes v. Snyder,*** **546 F.3d 516, 524 (7th Cir. 2008) (subjective component satisfied when a defendant's response to the risk was so "plainly inappropriate as to permit the inference that [he] intentionally or recklessly disregarded his needs.").** This is particularly true since Dr. Chandra had a history of insisting that Gay not have anything in his mouth while he was restrained. *See* Doc. 95-2, pp. 14 (Dr. Chanda did not offer Gay any food while restrained because he believed no objects should be placed in his mouth); Doc. 95-2, p. 24 (Dr. Chandra would not allow Gay to have food or other property when it was believed that he might use these items to harm himself).

Thus, the Court must grant summary judgment in Dr. Chandra's favor as to Gay's generic claim that Dr. Chandra violated his right by restraining him at all. However, a genuine issue of

material fact exists with respect to Gay's narrower claim that Dr. Chandra violated his rights by restraining him while he had a paperclip in his mouth.

### e.  Gay's Bed

Gay's final claim regarding the conditions of his confinement is that Dr. Chandra violated his rights by restraining him for 32 hours on a "hard piece of metal" with no mattress.  Dr. Chandra argues that there is no evidence that he "selected the bed frame, nor that the bed itself caused any injury." Doc. 103, p. 3.  Dr. Chandra further contends that a jury could find at most that Gay was uncomfortable.  However, the Court notes that during his deposition, Dr. Chandra stated that when an inmate is restrained, Tamms' protocol requires that a mattress is placed under them.  Gay claims that he was deprived of a mattress.

While an Eighth Amendment violation can occur if an inmate is restrained for an extended period of time, there is no evidence before the Court that Dr. Chandra was the person responsible for the beds and mattresses (or lack thereof) at Tamms, and Gay has produced no evidence that a decision to restrain him in this bed was "reckless."  Lacking any evidence that could support a finding of Dr. Chandra's personal involvement in the condition of Gay's bed, the Court must grant summary judgment in favor of Dr. Chandra as to this particular aspect of Gay's conditions of confinement claim.

## 2.  Gay's Deliberate Indifference Claim

Deliberate indifference to a prisoner's serious illness or injury states a cause of action under 42 U.S.C. § 1983.  *Estelle v. Gamble,* **429 U.S. 97, 104-05 (1976).**  The Supreme Court has explained that "deliberate indifference to the serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment."  *Id.*  This prohibition applies to "both prison doctors in their response to the prisoner's needs [and] to prison guards" who interfere with

an inmate's access to medical care.  *Id.*  Thus, to prevail on an Eighth Amendment claim, a prisoner must show that "(1) he had a serious medical need, and (2) the defendants were deliberately indifferent to it."  *Wynn v. Southward,* **251 F.3d 588, 592 (7th Cir. 2001).**

Thus, the first question the Court must resolve is whether Plaintiff's illness constitutes a serious medical need under the Eighth Amendment.  Plaintiff predictably views his condition as serious, but Dr. Chandra is not so sure.  Although Dr. Chandra admits that Gay suffers from "complicated mental health disorders," he is unwilling to concede that these disorders are serious because he believes "Gay engages in self harm for secondary gains and not because Gay is mentally ill."  Doc. 95-9, pp. 27, 40, 50.  But to avoid summary judgment on this issue, Gay need only produce enough evidence to support a finding that he suffers from a medical condition that is "objectively, sufficiently serious."  *Greeno v. Daley,* **414 F.3d 645, 653 (7th Cir. 2005).**  If the "condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention," then it is serious and triggers the Eighth Amendment. *Id.; see also Wynn,* **251 F.3d at 592;** *Foelker v. Outagamie County***, 394 F.3d 510, 512 (7th Cir. 2005).**

Mental illnesses that require treatment are "serious medical needs" within the meaning of the Eighth Amendment.  *Glick v. Walker,* **2008 WL 896205, \*\*2 (7th Cir. Apr. 2, 2008);** *Sanville v. McCaughtry,* **266 F.3d 724, 734 (7th Cir. 2001).**  Gay's "complicated" disorders have not only required ongoing psychiatric treatment for more than ten years, they have also resulted in behavior that is so disturbing that even a person who with no medical training could recognize that Gay's ailments are "serious."   There is also proof in the record demonstrating that Gay's condition often required medication for treatment.  Therefore, a jury could easily find that Gay has a serious medical need.

But whether Dr. Chandra was deliberately indifferent to Gay's medical needs is a far more complicated question.  Dr. Chandra maintains that Plaintiff has no evidence that would permit a jury to

decide this issue in Gay's favor because his medical records show that Gay was given treatment on a regular basis. Gay argues that Dr. Chandra was deliberately indifferent because he ordered him to be restrained knowing he had an object in his mouth, and he refused to prescribe him medication even though he knew it helped alleviate Gay's anxiety and suppressed Gay's need to cut himself.

Courts give deference to the treatments of physicians as "there is not one proper way to practice medicine in prison." *Jackson v. Kotter*, **541 F.3d 688, 697-98 (7th Cir. 2008).** A doctor is not deliberately indifferent to an inmate's serious medical needs unless he or she makes a decision that represents "such a substantial departure from accepted professional judgment, practice or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* But a physician can be deliberately indifferent to an inmate's serious medical needs even if he has not completely ignored them. *Edens v. Larson,* 2004 WL 2202535 (7th **Cir. Sep. 23, 2004);** *Hayes v. Snyder,* **546 F.3d 516, 524 (7**[th] **Cir. 2008).** "Thus, the complete question is whether, when viewing the record in the light most favorable to [Gay], a reasonable trier of fact could conclude that [Dr. Chandra] was subjectively aware of [Gay's] serious medical condition and either knowingly or recklessly disregarded it." *Id.*

To answer this question, it is appropriate to assess the facts as each party views them. Gay cannot dispute that when he cut himself, Dr. Chandra repeatedly evaluated him, diagnosed his condition, and made sure he was monitored by mental health staff. *See* Doc. 95-2, pp. 4-35. When he believed it was necessary, Dr. Chandra ordered Gay to be placed in therapeutic restraints, and at times, on suicide watch. These facts could support a finding that Dr. Chandra did not disregard Gay's medical needs but rather provided the treatment he believed was appropriate.

Yet throughout the months that are at issue, Dr. Chandra continually determined that Gay did not need any psychotropic medication, even though Dr. Chandra had prescribed him medication years

before and Gay's medical records from other institutions show that he was frequently prescribed medication. *See e.g.,* Doc. 95-2, pp. 4, 12, 13, 15.

Dr. Chandra claims that Gay cut on his penis and thighs, not because he had a "true mental illness," but because he is an intelligent manipulator who mutilated himself to obtain attention from female members of Tamms' mental health staff. Doc. 95-2, p. 6, 8, 11. Dr. Chandra further states that Gay also did this because he knew that the staff would have to clean his wounds, and he used this attention to gratify himself sexually. Doc. 95-2, p. 16.

But while that conclusion is not implausible, Gay's medical records from previous years show that even when Gay was confined at institutions other than Tamms, he mutilated himself. Doc. 100-11. In addition, Gay frequently took medication to help with his condition. In fact, Gay asked Dr. Chandra for medication "so he could cope," and often asked to be placed in restraints so he would stop cutting. Doc. 95-2, pp. 11, 25, 47. Dr. Chandra still found, however, that Gay did not need any medication, and that Gay hurt himself only "for secondary gain." Doc. 95-2, p. 16. Finally, there were times when it appears that Gay did not want to be around Tamms' female staff at all, as demonstrated by his threats to throw feces on them and bite them. Doc. 95-2, p. 17, Exhs. 1 & 72; Doc. 100-8, p. 10.

A medical professional's decision to withhold medication coupled with evidence demonstrating apathy can preclude summary judgment on an inmate's Eighth Amendment claim. ***See Greeno,* 414 F.3d at 649 (reversing summary judgment where a nurse withheld medication that could have helped an inmate).** Summary judgment is also inappropriate "[i]f [an] inmate's suffering lasted for several months on account of the denial of . . . medication, and if [the physician] was personally responsible for the denial of needed medication during the time period in question . . . ." ***Champion,* 2009 WL 1940775 at \*6.** Consequently, the Court finds that a jury could believe Dr. Chanda's

decision not to give Gay any medication demonstrates a deliberate indifference to Gay's medical needs. Accordingly, summary judgment cannot be granted as to this claim.

### 3.  Qualified Immunity

The Court next addresses Dr. Chandra's argument that he is entitled to qualified immunity.  "In determining whether qualified immunity applies, the Court engages in a two-step inquiry.  First, viewing the facts in the light most favorable to the plaintiff, the Court determines whether the official violated a constitutional right.  If the answer is yes, the Court then asks whether that right was clearly established at the time of the violation." ***Moss v. Westerman*, 2009 WL 211148, \*4 (S.D. Ill. Jan. 29, 2009).**  "To be 'clearly established,' the right in question must be 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  ***Washington v. Haupert*, 481 F.3d 543, 548 (7th Cir. 2007) (quoting *Miller v. Jones*, 444 F.3d 929, 934 (7th Cir. 2006)).**

As noted above, the Court has determined that there is a genuine issue of material fact as to whether Dr. Chandra violated Gay's Eighth Amendment rights.  Moreover, Gay's right to receive medical treatment for his serious medical needs, and his right to not to be punished through the conditions of his confinement is a clearly established right.  Thus, the Court finds that Dr. Chandra is not entitled to qualified immunity.

### 4.  Available Damages

Dr. Chandra's final argument in support of his motion for summary judgment is that Gay is not entitled to any more than nominal damages since he has no evidence of a physical injury caused by Dr. Chandra.  The Court finds that this argument is premature.  If Gay should ultimately prevail, the totality of evidence produced at trial will better permit the Court to determine what damages are available to Gay upon a proper motion at the Rule 50 stage.  Until then, the Court declines to reach this issue.

## E.  Conclusion

Accordingly, the Court hereby **GRANTS IN PART AND DENIES IN PART** Dr. Chandra's motion for summary judgment (Doc. 95).  The motion is **GRANTED** insofar as the Court **DISMISSES** Gay's conditions of confinement claim (Count 1) insofar as it is premised upon the allegations that it was unconstitutional to restrain him at all, and that Gay was deprived of his constitutional rights when he was restrained against a steel bed without a mattress.  The motion is **DENIED** in all other respects.

Gay's conditions of confinement claim (Count 1) remains pending insofar as it is based on the allegations that (1) the temperature in his cell was excessively low, (2) he was deprived of food for an excessive period of time, (3) he was given inadequate clothing, and (4) he was restrained even though Dr. Chandra knew he had a paperclip in his mouth.  Gay's deliberate indifference claim (Count 2) also remains pending.

The parties are reminded that this case is set for trial at **9:00 a.m. on September 14, 2009**. Additionally, the Final Pre-Trial Conference before the undersigned District Judge is set for **11:00 a.m. on September 1, 2009.**

**IT IS SO ORDERED.**

**DATED this 28th day of August 2009.**

**s/ Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**